IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

COPLEY V. ADVANCED SERVICES, INC.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

WINFIELD SCOTT COPLEY, JR., APPELLEE,

V.

ADVANCED SERVICES, INC., AND CORVEL INSURANCE, APPELLANTS.

Filed March 1, 2022.    No. A-21-209.

Appeal from the Workers' Compensation Court: DIRK V. BLOCK, Judge. Affirmed in part, and in part reversed.

William J. Birkel, of McGrath, North, Mullin & Kratz, P.C., L.L.O., for appellants.

Thomas A. Wagoner for appellee.

MOORE, BISHOP, and ARTERBURN, Judges.

PER CURIAM.

INTRODUCTION

Advanced Services, Inc., and its insurance carrier, Corvel Insurance (referred to herein individually and collectively as "Advanced Services"), appeal from the Nebraska Workers' Compensation Court's award of benefits to Winfield Scott Copley, Jr., after he suffered injuries to both his left shoulder and his left eye in the scope and course of his employment with Advanced Services. In the award, the compensation court found that Copley's shoulder injury had reached maximum medical improvement and that he was entitled to an award of permanent partial disability payments. However, the compensation court also found that Copley's injury to his left eye had not reached maximum medical improvement. As a result, the court ordered Advanced Services to continue to pay to Copley temporary total disability payments until such time as the left eye injury reached maximum medical improvement.

- 1 -

On appeal, Advanced Services assigns multiple errors, including that the compensation court erred in ordering it to pay continuing temporary total disability payments, even though one of Copley's injuries, the injury to his left shoulder, had reached maximum medical improvement. Advanced Services asserts that because Copley is not entitled to temporary disability payments as a result of his eye injury, it does not matter whether that injury has reached maximum medical improvement. Advanced Services also assigns as error the compensation court's determination that Copley was permanently disabled as a result of the injury to his shoulder.

Upon our review, we affirm the award of continuing temporary disability benefits. However, we reverse that portion of the award which specifically determined Copley's permanent impairment for his shoulder injury. Such determination was premature since not all of Copley's injuries have reached maximum medical improvement.

BACKGROUND

In November 2018, Copley worked for Advanced Services. At that time, he was assigned to work at a lumberyard as a truckdriver. Copley's work assignment included the loading of lumber and construction materials onto the truck for delivery. On November 6, 2018, Copley was operating a forklift to load pallets onto his delivery truck. The front of the forklift tipped forward suddenly and unexpectedly and Copley was thrown into the "roll cage" of the forklift, striking the left side of his face and his left shoulder.

Copley did not immediately seek treatment for his injuries. Instead, he continued to work, completing his normal duties. However, on November 30, 2018, Copley was unloading heavy boxes while at work. His left shoulder became so painful that he was no longer able to perform his job duties. Over the next few days, Copley noticed that his left arm had turned black and blue.

On December 3, 2018, Copley visited a local emergency room, where he sought treatment for his left shoulder. He was tentatively diagnosed as suffering from an injury to his rotator cuff and a tear to his biceps tendon. He was referred to an orthopedic doctor for further evaluation. Notably, Copley did not mention any injury to the left side of his face or to his left eye during this visit to the emergency room.

On December 19, 2018, Copley was seen by Dr. L.F. Lesiak, an orthopedic surgeon. At that time Copley reported that in addition to the accident causing a left shoulder injury, he was experiencing blurred vision and headaches from hitting his face on the cage of the forklift. Lesiak noted that Copley had suffered a prior rotator cuff tear and ordered an MRI of the shoulder. The MRI confirmed the tentative diagnosis Copley received from the emergency room personnel. According to Lesiak, Copley had "a massive chronic left rotator cuff tear" as well as a tear to his biceps tendon. Lesiak specifically found that the rotator cuff injury was chronic in nature and "certainly did not happen when he was injured in a forklift accident at work," but that the biceps tendon tear was work related. Lesiak recommended surgery to address the injuries to Copley's left shoulder.

Copley subsequently sought a second opinion from Dr. Brent Hood, who concurred with Lesiak's diagnosis and recommended surgery for the shoulder injuries. On March 27, 2019, Copley underwent surgery performed by Hood to repair his biceps tendon and his rotator cuff. While the surgical repair as to the biceps tendon appeared to resolve that issue, the repair as to the rotator cuff tear was not as successful. Copley continued to suffer from pain and physical

limitations as a result of his surgery. It was recommended that Copley undergo further surgical intervention in the future.

On December 23, 2018, more than 1 month after the November 6 accident, Copley visited the emergency room, seeking treatment for the first time for pain to the left side of his face and his left eye which he attributed to the work accident. Copley indicated that he was also experiencing frequent headaches and changes in his vision. Emergency room personnel diagnosed Copley as suffering from multiple fractures to his face. He followed up with an ophthalmologist a few days later, who found Copley to have "tenderness and blurred vision." The ophthalmologist suspected that Copley may have "optic nerve neuropathy," and referred him to a neuro-ophthalmologist for further evaluation. The neuro-ophthalmologist diagnosed Copley as suffering from "a 50 percent reduction in left corneal sensation and decreased left visual field deficits." Copley continued to follow up with the neuro-ophthalmologist for his headaches and vision issues. The neuro-ophthalmologist has noted a progressive increase in Copley's visual deficits.

While Copley sought treatment for his left shoulder and left eye injuries, he continued to work for Advanced Services, in lighter duty positions. Prior to his March 2019 shoulder surgery, Copley continued to work at the same lumberyard, assisting other truckdrivers by loading small, light items onto their trucks. A few weeks after the surgery, on April, 19, 2019, Copley was released to return to work with restrictions regarding the use of his left arm. At that time, he was assigned to work in Advanced Services' offices. Later, he was assigned to work at a Goodwill Store, testing electronics to determine whether they functioned properly.

In a letter dated October 25, 2019, Dr. Edward Fehringer, an expert hired by Advanced Services to review Copley's medical records, opined that Copley had reached maximum medical improvement as to his left shoulder injury that occurred on November 6, 2018. Fehringer indicated that Copley would have permanent restrictions as a result of his shoulder injury, including, "only limited work above chest height and that within two feet of his body[.]" Presumably after receiving Fehringer's letter, on October 29, 2019, Advanced Services notified Copley that it would no longer be providing him with a lighter duty position which would conform to his physical restrictions. As such, Copley did not return to work at Advanced Services. As of the time of trial he had not yet found other employment.

Copley filed a petition in the compensation court alleging that he was injured on November 6, 2018, in the course and scope of his employment with Advanced Services. A hearing was held on Copley's petition in September 2020. At the hearing, Copley and Advanced Services stipulated to the following facts: that Copley was employed with Advanced Services on November 6, 2018; that Copley notified Advanced Services of his accident and resulting injury as soon as practicable; and that Copley's average weekly wage at Advanced Services was $605 per week. The issues in contention included whether Copley's accident occurred in the scope and course of his employment with Advanced Services, whether the injuries suffered by Copley were caused by the work-related accident, and whether Copley had suffered periods of disability as a result of the accident.

The parties offered into evidence some of Copley's employment records and his medical records from various providers. In addition to this evidence, Copley testified. Much of Copley's testimony has been recounted above in the description of Copley's accident and resulting injuries. However, Copley also provided additional information about his injuries. As to his shoulder injury,

Copley admitted that prior to his November 2018 accident, he had previously injured his left shoulder and, in particular, his rotator cuff. In fact, in 2014, Copley underwent surgery to repair his left rotator cuff. He testified that after this surgery and some physical therapy, he was able to return to his work as a truckdriver for a different company with no restrictions. In contrast to the prior surgical success, Copley testified that after his shoulder surgery in March 2019, the surgical repair to his rotator cuff did not last even long enough for him to complete physical therapy. He explained that at the present time, he is not capable of lifting much more than a gallon of milk with his left arm. Copley testified that he needs another shoulder surgery in order to reduce his pain and increase his mobility and strength. Without this surgery, Copley has been unable to find new employment.

Copley also testified that he continued to suffer from migraines at the time of the hearing. And, while medication he was taking had reduced the severity and number of occurrences of the migraines, the medication had not improved his vision. Copley explained that his doctor had told him that if his loss of peripheral vision continues to worsen, he may not be able to pass the vision test necessary to renew his commercial driver's license. However, he admitted that no medical professional had told him that he is currently unable to drive a truck due to a vision impairment. Copley indicated that he continues to see his neuro-ophthalmologist every 6 months.

On February 9, 2021, the compensation court issued its award. In the award, the court specifically indicated that it found Copley to be a credible and reliable witness. The court further found that Copley's November 6, 2018, accident with the forklift occurred in the scope and course of his employment with Advanced Services. The compensation court found that while Copley's torn biceps tendon was the result of the November 6 work-related accident, that the injury to his rotator cuff was a preexisting condition that was not caused by the accident. Specifically, the court explained, "[T]he Court is not persuaded that [Copley] suffered injury to his rotator cuff as a result of the accident of November 6, 2018." The court went on to find that despite conflicting expert medical opinions, Copley's eye injury, facial fractures, and headaches were also caused by the November 6 accident.

In discussing whether Copley was entitled to disability payments, the court first discussed whether he had reached maximum medical improvement as to his two distinct injuries. The compensation court explicitly adopted the opinion of Fehringer who opined that Copley had reached maximum medical improvement as to his shoulder injury on October 29, 2019, and that he had suffered a permanent physical impairment of 5 percent as a result of the injury to his left shoulder. The court stated:

> The Court finds that on October 29, 2019, [Copley] reached maximum medical improvement for the left shoulder injury he suffered as a result of the November 6, 2018, work accident. The Court further finds that, thereafter, [Copley] suffered a permanent physical impairment of 5 percent of his left arm as a result of the work accident of November 6, 2018. These findings entitle [Copley] to $403.33 per week for a period of 11.25 weeks. (225 x 5% = 11.25[)].

As to Copley's eye injury, the compensation court found that Copley had not reached maximum medical improvement yet:

[Copley] has remained under active medical care for the treatment of his headaches and eye injury with [the neuro-ophthalmologist]. [The neuro-ophthalmologist] has continued to monitor and document [Copley's] left eye and headaches, and has noted a progression of his visual field loss and an increase in the frequency and intensity of headaches. [The neuro-ophthalmologist] has recommended further evaluation and testing of his field of vision for loss or changes. On March 17, 2020, [the neuro-ophthalmologist] noted that his field of vision was relatively stable, however, no opinion that he had reached maximum medical improvement was articulated. In fact, [the neuro-ophthalmologist] recommended continued treatment of the headaches and eye as well as additional evaluation.

Because Copley's eye injury had not reached maximum medical improvement by the time of the hearing, the compensation court determined that "payment of permanent disability for [Copley's] left arm injury should not commence until he reaches maximum medical improvement for all injuries suffered as a result of the November 6, 201[8], accident." The compensation court ordered Advanced Services to pay Copley

$403.33 per week in temporary total disability from and after October 29, 2019, through the date of trial, and for so long thereafter as he remains temporarily and totally disabled. When [Copley] reaches maximum medical improvement from all injuries suffered in the work accident of November 6, 2018, he shall be entitled to the statutory amounts of permanent disability due to this accident and injuries, including the 5 percent left arm impairment and permanent disability as a result of his vision loss and headaches, if any.

After the compensation court entered its award, Advanced Services filed a motion for "reconsideration/modification of award." In the motion, Advanced Services asserted that the compensation court erred in awarding Copley continuing temporary disability payments due to his eye injury not reaching maximum medical improvement yet. Advanced Services contended that Copley's eye injury could not independently support an award of temporary disability payments. After a hearing, the compensation court overruled Advanced Services' motion.

Advanced Services appeals here.

## ASSIGNMENTS OF ERROR

On appeal, Advanced Services assigns five errors. It argues, restated and reordered, that the compensation court erred in (1) finding that Copley injured his eye in the course and scope of his employment; (2) finding Copley suffered permanent restrictions as a result of his left shoulder injuries; (3) awarding Copley continuing temporary total disability payments because he had not reached maximum medical improvement as to his eye injury, even though he had reached maximum medical improvement as to his shoulder injuries; (4) "failing to clearly specify the evidentiary and factual basis for its determination of the running temporary total disability award" in contravention of Rule 11 of the Nebraska Workers' Compensation Court Rules of Procedure; and (5) denying Advanced Services' motion for reconsideration or modification of the award.

STANDARD OF REVIEW

A judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Hynes v. Good Samaritan Hosp.*, 285 Neb. 985, 830 N.W.2d 499 (2013). On appellate review, the factual findings made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Gardner v. International Paper Destr. & Recycl.*, 291 Neb. 415, 865 N.W.2d 371 (2015). In workers' compensation cases, an appellate court is obligated to make its own determinations regarding questions of law. *Id.*

ANALYSIS

*Injury to Left Eye and Face.*

On appeal, Advanced Services asserts that the compensation court erred in finding that Copley's eye and facial injuries were caused by the November 6, 2018, work accident. Essentially, Advanced Services argues that the court erred in accepting the opinion of Copley's treating neuro-ophthalmologist over the opinion of its own expert.

Copley's treating neuro-ophthalmologist, Dr. Amita Vuppala, opined that Copley's eye and facial injuries were caused or aggravated by the November 6, 2018, work accident. Vuppala stated that such opinion was based on a reasonable degree of medical or scientific certainty. To the contrary, Advanced Services' ophthalmology expert, Dr. Alan Weingarden, opined that Copley's eye and facial injuries were not caused by the November 6, 2018, work accident. Weingarden believed that Copley's current complaints of vision problems and headaches were unrelated to the accident: "The pathophysiology of a work injury is immediate damage followed by subsequent improvement. [Copley] has been developing new signs and symptoms long after the injury. This is not physiologically possible." Notably, Weingarden did not ever personally examine Copley. His opinion was based solely upon a review of Copley's medical records.

In the compensation court's award, it explicitly adopted the opinion of Vuppala and found that Copley's eye and facial injuries were caused by the work accident. In so finding, the court explained that it found Weingarden's opinion to be unpersuasive:

> The Court is not persuaded by [Weingarden's] opinion as the claimed onset of symptoms was immediate and [Copley's] complaints of vision changes were noted [to multiple care providers in the weeks after the November 6, 2018, work accident]. [Copley's] care for his eye complaints began extensively, subsequent to these reports, commencing . . . on January 11, 2019.

The compensation court is the sole judge of the credibility and weight to be given medical opinions, even when the health care providers do not give live testimony. *Yost v. Davita, Inc.*, 23 Neb. App. 482, 873 N.W.2d 435 (2015). Resolving conflicts within a health care provider's opinion also rests with the compensation court, as the trier of fact. *Id.* When the record presents nothing more than conflicting medical testimony, an appellate court will not substitute its judgment

- 6 -

for that of the compensation court. *Id*. The compensation court chose to find the opinion of Vuppala credible, and we do not reweigh that decision on appeal. Based on the record before us, we cannot say the compensation court was clearly wrong in determining that Copley's eye and facial injuries were caused by the November 6, 2018, work accident.

*Permanent Restrictions as to Left Shoulder Injury.*

Advanced Services assigns as error the compensation court's finding that Copley suffered permanent restrictions as a result of his work-related shoulder injury. Notably, in the argument section of Advanced Services' brief to this court, it also appears to challenge the court's finding that the shoulder injury rendered Copley permanently partially disabled. However, because such issue was not both assigned and argued, we do not consider Advanced Services' specific assertions regarding the compensation court's finding of permanent partial disability. See *AVG Partners I v. Genesis Health Clubs*, 307 Neb. 47, 948 N.W.2d 212 (2020) (alleged error must be both specifically assigned and specifically argued in brief of party asserting error to be considered by appellate court).

Advanced Services' contention that the compensation court erred in finding that Copley suffered permanent restrictions as a result of his work-related shoulder injury is based upon the court's reliance on the opinion of Fehringer, who served as an expert hired by Advanced Services. Specifically, Advanced Services argues that its expert's opinion regarding permanent restrictions "expressly notes the uncertainty in identifying the cause of [Copley's] alleged permanent restrictions," and "[i]mportantly, Dr. Fehringer <u>did not</u> definitively determine that the cause of [Copley's] need for permanent restrictions was the work injury." Brief for appellant at 26 (emphasis in original). Advanced Services points out that Fehringer stated it was "extremely difficult to try and determine how much of [Copley's] residual weakness and/or motion is related to the chronic tear, the work-related injury, and/or the surgery used to treat it. I am simply using 5% as an estimate of how much we can attribute the aggravation of [Copley's] preexisting disease to the work-related process." Upon our review, we conclude that Fehringer's opinion is sufficiently definite regarding the permanent restrictions being the result of the work-related injury.

The law is well established that a workplace injury and a preexisting condition can result in a compensable disability. A worker's compensation claimant can recover benefits when an injury, arising out of and in the course of employment, combines with a preexisting condition to produce a disability. *Gardner v. International Paper Destr. & Recycl.*, 291 Neb. 415, 865 N.W.2d 371 (2015). Fehringer's opinion reflects his effort to distinguish the permanent restrictions and permanent impairment he attributed to the workplace aggravation of Copley's preexisting condition from the preexisting rotator cuff condition itself, thus resulting in a relatively low permanent impairment rating. Fehringer specifically indicated that the physical restrictions he assigned to Copley's left shoulder were related to the November 2018 workplace injury.

In a letter authored by Fehringer dated October 25, 2019, he diagnosed Copley as suffering from "a massive chronic left rotator cuff tear with developing cuff tear arthropathy." The same day that Fehringer authored this letter, he performed an independent medical examination of Copley. During this physical examination, Fehringer noted that in addition to the injury to the rotator cuff, Copley's left shoulder also had "an obvious long head of the biceps tendon rupture

. . . with a deformity." Fehringer did not reference the injury to the biceps tendon when responding to the inquiry for a "Diagnosis."

Also in the October 25, 2019, letter, Fehringer opined, to a reasonable degree of medical certainty, regarding the cause of Copley's shoulder injury:

In my medical opinion Mr. Copley's current left shoulder complaints are related to his preexisting rotator cuff tear resulting from a re-tear of his 2014 repair with pain and dysfunction following his work-related injury; and shoulder surgical intervention in March 2019. In my opinion, the chronic rotator cuff tear is related to a preexisting condition known as rotator cuff re-tear or failure to heal following surgical intervention in 2014. This is often part of the natural progression. The re-tear happened before his November 2018 injury. His late November 2018 injury was an aggravation of that preexisting injury.

Fehringer also opined to a reasonable degree of medical certainty as to whether Copley's work-related accident in November 2018 had resulted in any permanent work restrictions as to his left shoulder: "In terms of work restrictions as a result of the alleged injury to the left shoulder, I would recommend limited work above chest height and that within two feet of his body as permanent restrictions." Fehringer further concluded that Copley had "reached maximum medical improvement as a result of the 11/30/2018 injury to the left shoulder as of today."

Fehringer's opinion that Copley had permanent restrictions as a result of the work-related injury to his left shoulder is sufficiently definite. Fehringer specifically stated that it was his opinion that Copley's work-related shoulder injury had resulted in him being permanently restricted to only performing limited work above his chest and to performing such "above chest height" work within 2 feet of his body. We find no error in the compensation court's reliance on Fehringer's opinion in determining Copley's permanent restrictions to his left shoulder were the result of the November 2018 work injury.

However, although not complained about by Advanced Services, we do note some confusion created by the court's statement referencing Fehringer's opinions when it stated, "The Court accepts these opinions and finds they are a reasonable representation of the permanent injury suffered by [Copley] as a result of the left bicep tear suffered as a result of the November 6, 2018, accident." Based upon Fehringer's opinions, which the court had just set forth and accepted, a more accurate summation of the doctor's opinions would have also included references to the aggravation of the preexisting chronic rotator cuff condition and the March 2019 surgery, which surgery treated both the rotator cuff and bicep conditions; Fehringer attributed Copley's "residual weakness and/or motion" to "the chronic tear, the work-related injury, and/or the surgery used to treat it." Therefore, the court's summary statement referencing only the left bicep tear is confusing. Regardless, the balance of the court's summation of Fehringer's opinions is supported by the record and presents a sufficient basis for the court's ultimate conclusion tying Copley's left shoulder restrictions to the workplace accident. The sufficiency of a compensation court's opinion is judged in the context of the expert's entire statement. See *Welke v. City of Ainsworth*, 179 Neb. 496, 138 N.W.2d 808 (1965). Accordingly, we affirm the decision of the compensation court regarding the permanent restrictions for the work-related shoulder injury.

As we explained above, Advanced Services did not both assign and argue its contention that the compensation court erred in concluding that Copley suffered a 5-percent permanent partial

impairment as a result of his work-related left shoulder injury. Because Advanced Services did not both assign and argue this assertion, we do not consider its specific contentions regarding the compensation court's decision. However, upon our own review, we find that the compensation court committed plain error in assigning any permanent impairment rating as a result of the left shoulder injury at this juncture in the proceedings. As such, we reverse the compensation court's conclusion that Copley suffered a 5-percent permanent partial impairment as a result of his work-related left shoulder injury.

Although an appellate court ordinarily considers only those errors assigned and discussed in the briefs, the appellate court may, at its option, notice plain error. *State v. Clausen*, 307 Neb. 968, 951 N.W.2d 764 (2020). Plain error exists where error, plainly evident from the record, prejudicially affects a substantial right of a litigant and is of such nature that if left uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of judicial process. See *Tyler F. v. Sara P.*, 306 Neb. 397, 945 N.W.2d 502 (2020).

In the compensation court's award, it explicitly determined that Copley had suffered a permanent physical impairment to his left arm:

> The Court finds that on October 29, 2019, [Copley] reached maximum medical improvement for the left shoulder injury he suffered as a result of the November 6, 2018, work accident. The Court further finds that, thereafter, [Copley] suffered a permanent physical impairment of 5 percent of his left arm as a result of the work accident of November 6, 2018.

The compensation court went on to find that the work-related injury to Copley's eye had not yet reached maximum medical improvement and that, as a result, he was still entitled to temporary disability payments. Upon our review, we conclude that the compensation court committed plain error in assigning a permanent disability rating to Copley's left shoulder injury while at the same time ordering the continuation of temporary disability payments.

Temporary disability contemplates the period the employee is submitting to treatment, is convalescing, is suffering from the injury, and is unable to work because of the accident. See *Meredith v. Schwarck Quarries*, 13 Neb. App. 765, 701 N.W.2d 387 (2005). When a worker has reached maximum recovery, the remaining disability is permanent and such worker is no longer entitled to compensation for temporary disability. *Id*. A given condition cannot at one and the same time be both temporary and permanent. *Rodriguez v. Hirschbach Motor Lines*, 270 Neb. 757, 707 N.W.2d 232 (2005). As such, a workers' compensation claimant should not receive temporary disability benefits upon reaching maximum medical improvement. *Id*. But, whereas in this case, a claimant has suffered more than one injury in a work-related accident, the date of maximum medical improvement for purposes of ending temporary disability benefits is established as follows:

> [E]ven if medical evidence establishes that a claimant's different injuries have different dates of maximum medical recovery, the legally significant date -- the date of maximum medical improvement for purposes of ending a workers' compensation claimant's temporary disability -- is the date upon which the claimant has attained maximum medical recovery from *all* of the injuries sustained in a particular compensable accident.

*Id*. at 764, 707 N.W.2d at 239 (emphasis in original). See, also, *Worline v. ABB/Alstom Power Int. CE Servs.*, 272 Neb. 797, 725 N.W.2d 148 (2006).

Because the compensation court determined that Copley's eye injury had not reached maximum medical improvement, it, in effect, determined that Copley had not reached maximum medical improvement for the purpose of ending his temporary disability benefits. Accordingly, the court's finding that Copley suffered from a 5-percent permanent disability as a result of his left shoulder injury was premature. In *Rodriguez v. Hirschbach Motor Lines, supra*, the Nebraska Supreme Court explained that when not all of a claimant's disabling injuries have reached maximum medical improvement, it will be difficult, "if not impossible," to determine a claimant's actual permanent disability. *Id*. at 763, 707 N.W.2d at 238. This is so because the determination of a claimant's permanent disability may require the court to consider the effect of different injuries that occurred in the same accident. *Id*. For example, in *Zavala v. ConAgra Beef Co.*, 265 Neb. 188, 655 N.W.2d 692 (2003), the Supreme Court analyzed how to determine permanent disability when a worker had sustained both a scheduled member injury and a whole body injury in the same accident. Therein, the court held that the Nebraska Workers' Compensation Act

> does not prohibit the court from considering the impact of both injuries in assessing the loss of earning capacity. In making such an assessment, the court must determine whether the scheduled member injury adversely affects the worker such that loss of earning capacity cannot be fairly and accurately assessed without considering the impact of the scheduled member injury upon the worker's employability. If the loss of earning capacity cannot be fairly and accurately assessed without such consideration, then the court is permitted to do so.

*Id.* at 199, 655 N.W.2d at 702.

In *Canas-Luong v. Americold Realty Trust*, 22 Neb. App. 999, 866 N.W.2d 101 (2015), this court reversed a decision of the compensation court which awarded the claimant a permanent partial disability benefit when she was not yet at maximum medical improvement for all of her injuries. We stated, "This permanent partial scheduled member award was premature, since the compensation court determined that Canas-Luong was not yet at MMI for her psychological injury and was entitled to ongoing temporary total disability benefits." *Id.* at 1004, 866 N.W.2d at 106.

Although in this case the compensation court did indicate that no permanent disability payments should be made until maximum medical improvement had been reached for all injuries suffered in the November 2019 work accident, we find that the court committed plain error in determining the specific amount of permanent disability Copley suffered as a result of his left shoulder injury. It is not yet clear how the injury to Copley's eye may interplay with his permanent physical restrictions as a result of the shoulder injury. As such, it is not yet possible to determine with any certainty, Copley's permanent partial disability rating. So, while we affirm the compensation court's decision that Copley's shoulder injury had reached maximum medical improvement and that, as a result of such injury, he had permanent physical restrictions, we reverse that portion of the award which determined his specific level of permanent partial disability.

Before reaching the next assigned error, we take a moment to address the portion of the concurrence/dissent which takes issue with the compensation court's reliance on Fehringer's opinion to determine Copley's 5-percent permanent partial disability to his left shoulder. Although

we are reversing that determination due to it being premature, as just discussed, the dissent nevertheless contends "the compensation court's opinion appears to attribute an impairment rating to an injury the court had previously found to be not compensable." The dissent points to wording used by the compensation court in the section of its opinion entitled "Causation," where it stated it was "not persuaded that [Copley] suffered an injury to his rotator cuff as a result of the accident of November 6, 2018." We find nothing unusual about this finding, as it is consistent with the opinions of Lesiak, Hood, and Fehringer. Lesiak found that the rotator cuff injury was chronic in nature and did not happen when Copley was injured in the forklift accident; Hood agreed. Fehringer also agreed with that assessment, noting that Copley's chronic rotator cuff tear was related to a preexisting condition and that the "re-tear happened before [Copley's] November 2018 injury." Fehringer made clear that the "November 2018 injury was an aggravation of that preexisting injury."

Accordingly, the compensation court's finding that the November 2018 accident did not cause Copley's rotator cuff injury is consistent with the medical opinions submitted to the court. The dissent notes that neither party complains of this issue and that the majority opinion has not taken "into account the compensation court's clear finding earlier in the opinion that the rotator cuff injury was in no way related to the work accident," which the dissent claims makes the compensation court's reliance on Fehringer's permanent partial disability opinion "extremely puzzling." The dissent suggests it would be "more prudent" to remand and direct the compensation court "to clarify or rectify the inconsistencies in its award." However, as discussed earlier, although we found some language in the compensation court's opinion to be confusing, we find no inconsistency in the compensation court's determination that the rotator cuff injury was not related to the work accident, but then finding that the aggravation to the rotator cuff injury was related to the work accident. It was not erroneous for the compensation court to rely on the medical opinions which determined the rotator cuff injury was not caused by the November 2018 accident, but to then rely upon Fehringer's opinion that the workplace accident "was an aggravation of that preexisting injury." Ultimately, Fehringer considered the preexisting "chronic tear, the work-related injury, and/or the surgery used to treat it," when calculating "how much we can attribute the aggravation of [Copley's] preexisting disease to the work-related process." And while the compensation court's reliance on the same was premature, it was not inconsistent with the record before it.

*Award of Temporary Total Disability Payments Until Copley Reaches Maximum Medical Improvement for His Eye and Facial Injuries.*

As we explained above, in *Rodriguez v. Hirschbach Motor Lines*, 270 Neb. 757, 707 N.W.2d 232 (2005), the Supreme Court held that a claimant reaches maximum medical improvement for purposes of ending the payment of temporary disability benefits when all injuries from a work-related accident have reached maximum medical improvement. Stated another way, if a claimant is unable to work as a result of work-related injuries, then the claimant is entitled to temporary disability benefits until all of the pertinent injuries have reached maximum medical improvement.

In this case, the compensation court relied on the Supreme Court's holding in *Rodriguez v. Hirschbach Motor Lines, supra*, when awarding Copley with continuing temporary disability

- 11 -

benefits because, while Copley's left shoulder injury had reached maximum medical improvement, the injury to his left eye had not yet reached maximum medical improvement. The compensation court explained:

> [The limitations to Copley's shoulder], although now permanent, when combined with [Advanced Services'] failure to accommodate them, has left [Copley] unable to return to work for which he has previous training and experience. As [Copley] has not reached maximum medical improvement for all injuries suffered, he is entitled to temporary disability.

On appeal, Advanced Services attempts to distinguish the facts of *Rodriguez* from the facts of this case. Specifically, Advanced Services asserts that unlike in *Rodriguez*, where the claimant remained off from work because of the injury that had not yet reached maximum medical improvement, in this case, Copley's eye injury, which had not reached maximum medical improvement, did not currently affect his ability to return to work. Rather, it was only Copley's shoulder injury, which had reached maximum medical improvement, which contributed to his inability to work. Advanced Services claims that the compensation court erred in awarding continuing temporary disability benefits when his remaining "non-MMI" injury did not affect his ability to return to work. Brief for appellant at 22. "While all injuries are to be considered for the purposes of MMI, it is improper to extend temporary benefits when the claimant has <u>no</u> temporary restrictions on his ability to return to work." *Id*. at 22 (emphasis in original).

While we agree with Advanced Services that there are not yet any restrictions from Copley's eye injury which prevent him from working, there is evidence that Copley has left shoulder restrictions which prevent him from returning to work, as discussed previously. In fact, it was precisely the restrictions to Copley's shoulder which caused Advanced Services to terminate Copley's employment. And, pursuant to *Rodriguez*, the compensation court was correct to consider such restrictions in awarding continuing temporary disability benefits.

Moreover, contrary to Advanced Services' assertion on appeal that the facts of this case are distinguishable from the facts in *Rodriguez*, we conclude that the factual differences between the cases are not significant. Copley presented evidence at the hearing that while his eye injury did not currently affect his ability to work, that such injury was likely to worsen over time. Copley indicated that if his eye injury continues to worsen, he may no longer be able to pass a driving test or be capable of driving a semi-truck. As such, it is entirely possible that Copley's eye injury may affect his ability to work before it ever reaches maximum medical improvement. Such a factual scenario is precisely the reason that permanent impairment and, thus, permanent disability, should not be determined until all of the claimant's injuries have reached maximum medical improvement. Temporary disability benefits should remain available to a claimant until such time as all injuries have reached maximum medical improvement, i.e. when it becomes apparent that the employee will get no better or no worse because of the injury. See *Rodriguez v. Hirschbach Motor Lines*, 270 Neb. 757, 707 N.W.2d 232 (2005). We affirm the compensation court's decision to award Copley with continuing temporary disability benefits until such time as his eye injury has reached maximum medical improvement.

*Remaining Assignments of Error.*

In its final assignments of error, Advanced Services asserts that the compensation court erred both in failing to provide a well-reasoned opinion pursuant to Rule 11 of the Nebraska Workers' Compensation Court Rules of Procedure and in denying its motion for reconsideration. The basis for both of these assigned errors relate to the same arguments made by Advanced Services in its previous assigned errors. Such arguments have been addressed by the analysis already provided. Copley remains unemployed because of the physical restrictions the compensation court properly attributed to the November 2018 workplace accident. The record also supports that the compensation court's decision to award Copley with continuing temporary disability benefits was based upon Copley not yet reaching maximum medical improvement for all of the injuries he suffered as a result of the November 2018 work-related accident.

CONCLUSION

Upon our review, we affirm the compensation court's finding that Copley's eye and facial injuries were caused by the November 6, 2018, work accident. We also affirm the court's decision that Copley suffered permanent physical restrictions to his left shoulder as a result of the work accident and the court's award of continuing temporary disability benefits pending Copley's eye and facial injuries reaching maximum medical improvement. However, we reverse the compensation court's determination of the amount of permanent partial disability Copley suffered as a result of the left shoulder injury. We find such determination to be premature in light of the fact that not all of Copley's injuries have reached maximum medical improvement.

AFFIRMED IN PART, AND IN PART REVERSED.

ARTERBURN, Judge, concurring in part, and in part dissenting.

I concur with the majority that there was sufficient evidence presented to support the compensation court's finding that Copley's eye and facial injuries were caused by the November 6, 2018, work accident. However, because I find that the compensation court's award contains inconsistencies with regard to its decision that Copley suffered any permanent impairment as a result of his work-related shoulder injury, I respectfully dissent from the remainder of the opinion.

In the compensation court's award, it found that the injury to Copley's left biceps tendon was caused by the November 2018 work accident. However, the court found that the injury to Copley's left rotator cuff was not the result of the work accident:

> Based upon the opinions of [the medical experts], the Court finds that [Copley] suffered an injury to his biceps tendon as a result of the accident on November 6, 2018. In so finding, the Court is not persuaded that [Copley] suffered injury to his rotator cuff as a result of the accident of November 6, 2018.

The compensation court went on to find that Copley "suffered a permanent physical impairment of 5 percent of his left arm as a result of the work accident of November 6, 2018." The court explicitly based its finding that Copley had suffered a permanent physical impairment as a result of the left biceps tear on the opinion of Fehringer. The court explained: "The Court accepts [the opinions of Fehringer] and finds they are a reasonable representation of the permanent injury

- 13 -

suffered by [Copley] as a result of the left bicep tear suffered as a result of the November 6, 2018 accident."

However, Fehringer's report conflicts with the compensation court's finding of permanent physical impairment in the left bicep. In his report, Fehringer attributed Copley's "current left shoulder complaints" to the injury to his rotator cuff. He opined that the November 2018 work accident had aggravated the preexisting injury to the rotator cuff. And, while Fehringer indicated that Copley would have permanent restrictions as a result of the injury to his rotator cuff, he explained,

> In the proverbial rearview mirror it is extremely difficult to try and determine how much of [Copley's] residual weakness and/or motion is related to the chronic tear, the work-related injury, and/or the surgery used to treat it. I am simply using 5% as an estimate of how much we can attribute the aggravation of his preexisting disease to the work-related process.

Notably, Fehringer's opinion regarding Copley's permanent impairment related only to the rotator cuff injury, not to the biceps tendon tear. In fact, Fehringer did not even mention the tear to Copley's biceps tendon when giving his opinion of permanent impairment. The compensation court explicitly found that only the injury to Copley's biceps tendon, and not the injury to Copley's rotator cuff, was caused by the work accident. Such finding is not challenged on appeal and, according to my review of the record, is supported by competent medical evidence. Given the compensation court's finding that Copley's rotator cuff injury was not caused by the work-related accident, the court's reliance on Fehringer's opinion of permanent disability is extremely puzzling. In fact, it appears clear to me that the compensation court and Fehringer are talking about two different shoulder injuries vis-a-vis the permanent restrictions. Stated another way, the compensation court's opinion appears to attribute an impairment rating to an injury the court had previously found to be not compensable.

The majority describes this inconsistency in the compensation court's award as "confusing," and then attempts to rectify this confusion by assuming that the compensation court intended to also reference an aggravation of the rotator cuff injury in its discussion of Copley's work-related shoulder injury. However, such an assumption does not take into account the compensation court's clear finding earlier in the opinion that the rotator cuff injury was in no way related to the work accident.

In my view, we must look to the plain language of the compensation court's opinion rather than making assumptions about the compensation court's intentions. It seems the more prudent course is to allow the compensation court to clarify or rectify the inconsistencies in its award. Although addressed to a different issue, Advanced Services assigned as error the compensation court's failure to provide a well-reasoned opinion as required by Rule 11A. Rule 11A provides that "[d]ecisions of the court on original hearing shall provide the basis for a meaningful appellate review. The judge shall specify the evidence upon which the judge relies." Given the inconsistency in the court's findings, I would conclude that the compensation court has failed to provide us with a sufficient basis to review its determination that Copley suffered any permanent impairment as a result of the work-related injury to his left shoulder. I would remand this issue back to the compensation court for further findings of fact and conclusions of law regarding whether Copley's

separate injuries to his left shoulder area were work related and whether any such work-related injuries resulted in permanent impairment to Copley.

Because I would reverse and remand on the basis that the compensation court failed to provide us with a sufficient basis to review its decision regarding the injuries to the left shoulder area, I need not address Advanced Services' remaining assignments of error. Were the case remanded, the remaining issues potentially would be resolved by the compensation court's revised decision.